**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

REBECCA S. MESLER,

                                Plaintiff,

    v.                                                No. 04-CV-92
                                                                    (LEK/DRH)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

---

**APPEARANCES:**                              **OF COUNSEL:**

AMDURSKY, PELKY, FENNELL &          GREGORY R. GILBERT, ESQ.
   WALLEN, P.C.
Attorney for Plaintiff
26 East Oneida Street
Oswego, New York 13126

HON. GLENN T. SUDDABY                  WILLIAM H. PEASE, ESQ.
United States Attorney for the            Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Post Office Box 7198
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

      Plaintiff Rebecca S. Mesler ("Mesler") brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for benefits under the Social Security Act. Mesler moves for a finding of disability and the Commissioner cross-moves for a judgment on the

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

pleadings. Docket Nos. 6, 9. For the reasons which follow, it is recommended that the Commissioner's decision be remanded for further proceedings.

## I. Procedural History

On June 18, 2002, Mesler filed an application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 40-42.[2] That application was denied after the initial determination and following reconsideration. T. 26-31. Mesler requested a hearing before an administrative law judge (ALJ), T. 32, which was held before ALJ William T. Vest, Jr. on September 10, 2003. T. 200-18. Mesler was represented by counsel. T. 25. In a decision dated October 23, 2003, the ALJ denied Mesler's claims. T. 8-20. On January 3, 2004, the Appeals Council denied Mesler's request for review, thus making the ALJ's findings the final decision of the Commissioner. T. 4-6. This action followed.

## II. Contentions

Mesler contends that the ALJ erred when he failed to accord the proper weight to her treating physician and when he found her capable of performing sedentary work. The Commissioner contends that there was substantial evidence to support the determination that Mesler was not disabled.

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Docket No. 4.

### III. Facts

Mesler is currently forty-nine years old, previously worked as a bartender, waitress, hostess, sales clerk, and dock worker, and has an eleventh grade education. T. 59-61, 71, 204. Mesler alleges that she became disabled on June 22, 2001 due to shoulder, arm, wrist, and right hip pain. T. 40-42.

### IV. Standard of Review

#### A. Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2002). In addition, the claimant's impairments must be of such severity that he or she is not able to do previous work or any other substantial gainful work considering the claimant's age, education, and work experience, regardless of whether such work exists in the immediate area, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work. 42 U.S.C. § 1382c(a)(3)(B) (2002).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 416.920, to evaluate SSI disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether,

3

> based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. § 416.920 (2005).

The plaintiff has the burden of establishing disability at the first four steps. Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). However, if the plaintiff establishes that an impairment prevents him or her from performing past work, the burden then shifts to the Commissioner to determine if there is other work which the claimant could perform. Id.

### B. Scope of Review

The reviewing court must determine if the commissioner has applied the proper legal standards and if the decision is supported by substantial evidence. Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw, 221 F.3d at 131 (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000). The ALJ must articulate specific factors to allow the reviewing

4

court to determine whether substantial evidence supports the decision. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).  If the Commissioner's finding is supported by substantial evidence, it is conclusive and on review, the court cannot substitute its interpretation of the administrative record for that of the Commissioner.  Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998); Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

## V.  Discussion

### A. Medical Evidence

On June 22, 2001, Mesler presented to Dr. Karl Auerbach after sustaining an injury to her buttocks and right upper extremity while at work. T. 81. Dr. Auerbach found that Mesler had a contusion of the right upper extremity and right buttock area. T. 81. There was a full range of motion of the right shoulder, tenderness on the end range of motion in the upper arm area, the right elbow had a full range of motion with tenderness, range of motion in the wrist was full, hand grasp was three out of five on the right, pulses and neurovascular checks were normal, and there was a full range of motion of the right hip. T. 81. Dr. Auerbach restricted Mesler to no carrying, lifting, pushing, or pulling greater than fifteen pounds for one week. T. 81. X-rays of the right elbow and forearm areas were negative for fracture. T. 81.

Dr. Linda Starck-McLean treated Mesler from June 29, 2001 until August 29, 2003.

T. 184. The diagnosis was right shoulder impingement[3] and possible sciatica.[4] T. 184. Mesler complained of right hip and shoulder pain which radiated into her neck and back, walked with a slight limp, and it was painful to toe-heel walk. T. 188-96. Dr. Starck-McLean found Mesler totally disabled for Workers' Compensation purposes. T. 188. On August 29, 2003, Dr. Starck-McLean found that Mesler could occasionally lift and carry up to ten pounds, could never lift and carry more than ten pounds, could sit, stand, and walk two hours in an eight-hour workday, could sit and stand ten-to-fifteen minutes without interruption, and could walk thirty minutes without interruption. T. 185. Dr. Starck-McLean found that Mesler could never climb or reach, could occasionally stoop, crouch, kneel, and crawl, and was restricted in pushing and pulling. T. 185-86. Mesler underwent physical therapy from July 23, 2001 to May 1, 2002 and appeared to have plateaued with therapy and continued to experience pain. T. 120-46. On August 28, 2001, x-rays of the cervical spine and right shoulder were normal. T. 96-97.

    Mesler was treated by Dr. Michael A. Colucci, an orthopedist, from October 18, 2001 to February 11, 2003 for her shoulder injury. T. 106-09, 160, 171-72. In October 2001, there was no edema or deformity of the cervical spine, right shoulder range of motion was forward elevation 140º, abduction 90º, external rotation 50º, and internal rotation to L1,

---

[3] "Chronic pressure on the rotator cuff . . . by the acromion or coracoid process or acromioclavicular joint. Damage to the structures of the shoulder is progressive, and may lead to pain, hemorrhage, tendinitis (inflammation of a tendon), tendon rupture, or bone spur formation." 5-S SCHMIDT'S ATTORNEYS' DICTIONARY OF MEDICINE 3104 (2004).

[4] "[A] syndrome characterized by pain radiating from the back into the buttock and into the lower extremity. . . caused by protrusion of a low lumbar intervertebral disc." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1491 (28th ed. 1994) [hereinafter DORLAND'S].

there was positive impingement, a negative drop arm test, mild tenderness in the coracoacromial ligament region, motor strength was 5/5 distally, and sensation was intact to light touch distally. T. 108. The impression was right shoulder impingement with possible right extremity radiculopathy. T. 109. Dr. Colucci gave Mesler a cortisone injection and prescribed physical therapy. T. 109. Dr. Colucci restricted Mesler to no overhead use of the right arm with no lifting, pushing, or pulling greater than ten pounds. T. 109. In November 2001, there was a full range of motion of the cervical spine and the impression was right periscapular pain with the same restrictions. T. 107. In March, September, and November, 2002, Dr. Colucci's impression and restrictions remained unchanged. T. 106, 174. An October 17, 2002 magnetic resonance image (MRI) of the shoulder showed a partial tear involving the supraspinatus tendons, degenerative changes, and no pathologies of the cervical spine. T. 182. On February 11, 2003, the impression continued to be right shoulder impingement, there was interval worsening, and Dr. Colucci recommended right shoulder arthroscopy, subacromial decompression, and possible rotator cuff repair. T. 160.

On October 12, 2001, Dr. Robert S. Knapp, a neurologist, examined Mesler. T. 86-87. The cervical spine had a full range of motion, cranial nerves were intact, reflexes were symmetric, there was no fasiculations or atrophy in the right arm, there were no vasomotor abnormalities, and Mesler had a patchy sensory loss in the right arm without a peripheral nerve or radicular pattern of loss. T. 86. An electromyography (EMG) did not reveal any abnormalities relative to acute or chronic denervation, and the electrodiagnostic data did not demonstrate any abnormalities in the shoulder. T. 86. On January 28, 2002, Dr. William J. Kingston, a neurologist, examined Mesler. T. 83-84. Nerve conduction studies showed normal conduction velocities in the right arm, an EMG showed no signs of denervation,

7

there was no evidence of reflex sympathetic dystrophy, and there were no objective neurologic deficits on examination. T. 84-85.

On February 5, 2002, Mesler was examined by Dr. Donovan Holder. T. 101-03. Mesler had a full range of motion in the upper and lower extremities, palpation was grossly unremarkable, there was evidence for trigger points deep to the right medial scapular border, sensory examination showed diminution to light touch at the right thumb, index, and little finger, and the remainder of the examination was grossly unremarkable. T. 102. The impression was myofascial[5] pain syndrome right medial scapular border. T. 103. Dr. Holder prescribed trigger point injections and a Transcutaneous Electric Nerve Stimulation (TENS)[6] unit. T. 103.

On June 14, 2002, Mesler was examined by Dr. Seth S. Greenky, an orthopedist. T. 147-48. Shoulders were symmetric, there was no scapular winging, there was limited motion in the right shoulder, a positive impingement sign, and tenderness in the parascapular region. T. 147. The impression was persistent right shoulder parascapular and back pain of uncertain etiology. T. 147-48. Dr. Greenky recommended a an MRI of the cervical and thoracic spine. T. 148. On July 18, 2002, Dr. Myra Shayevitz conducted a consultive examination of Mesler. T. 149-52. Mesler complained of low back pain radiating down the right hip to the knee which increased upon sitting, standing, or walking for more than ten or fifteen minutes. T. 149. Mesler's gait was normal, the cervical spine had flexion

---

[5] "[P]ertaining to or involving the fascia [fibrous tissue] surrounding and associated with muscle tissue." DORLAND'S 608.

[6] TENS involves the application of skin electrodes to nerve endings to block the transmission of pain signals to the brain. Streeter v. Barnhart, No. 01 Civ. 4066(DLC), 2002 WL 467504, at *14 n.4 (S.D.N.Y. Mar. 28, 2002).

at 20º, extension at 10º, with cervical 10º, the right shoulder was limited, straight-leg raising at 30º caused pain radiating down the legs, there was full range of motion in the lower extremities, and there was a slightly decreased dexterity of the right hand. T. 151.

Dr. Shayevtiz's impression was status post-accident resulting in right shoulder pain, chronic neck pain with radicular component, and low back pain with radiculopathy. T. 151. The prognosis was very guarded. T. 152. Dr. Shayevitz found that there were definitive problems with extensive prolonged sitting, standing, walking, and climbing, that Mesler was limited in the ability to pick up anything with the right hand, that Mesler should keep her elbow at waist level, and should limit lifting and bending until a definitive diagnosis was made. T. 152.

On April 8 and May 20, 2003, Dr. Bai examined Mesler for hip and back pain. T. 176-78. Mesler had a slight antalgic gait, was able to walk on toes and heels without difficulty, there was decreased range of motion in the right shoulder, cervical and lumbar spine, sensation was intact, and straight-leg rasing was questionably positive to 50º on the right and negative on the left. T. 177. The impression was chronic low back pain with radiating pain to the right lower extremity, chronic lumbar spine sprain/strain, right hip pain, right lumbar radiculopathy symptom and right sacroiliac joint dysfunction. T. 177. On May 20, 2003, the examination was unchanged. T. 176.

Mesler took Vicodin, Flexeril, and Celebrex, used hot/cold compresses, used a TENS unit, had steroid injections, underwent physical therapy, and contemplated surgery. T. 65, 207. A physical residual functional capacity (RFC) assessment completed on July 30, 2002 found that Mesler could occasionally lift and carry twenty pounds, could frequently lift and carry ten pounds, and could stand, walk, and sit six hours in an eight-hour workday,

and was limited in pushing and pulling with the upper extremities . T. 153–59.

## B. Treating Physician's Rule

Mesler contends that the ALJ erred in failing to give controlling weight to the opinion of Dr. Starck-McLean, her treating physician. The Commissioner contends that the ALJ properly evaluated the medical opinions of Dr. Strack-McLean.

> When evaluating a claim seeking an occupational disability annuity the hearing officer must look at the (1) objective medical facts and clinical findings, (2) treating physician's diagnoses and other medical opinions based on the medical facts, (3) subjective evidence of disability and pain related by claimant, and corroborating or contravening evidence of these conditions, if any, and (4) the claimant's educational background, age, and work record.

Harris v. Railroad Retirement Bd., 948 F.2d 123, 126 (2d Cir. 1991) (citing Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).  Mesler contends that the ALJ failed to give adequate consideration to her treating physician's determination of disability.  Under the regulations, a treating source's opinion is entitled to "controlling weight" if the Commissioner "find[s] that [it] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); Shaw, 221 F.3d at 134.  Before discounting the opinion of a treating source, however, the ALJ must provide "good reasons."  Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to: assess the following factors in determining how much weight to afford that opinion: (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's

10

consistency with the record as a whole; (4) whether the opinion is from a specialist; and (5) other relevant factors. Alder v. Apfel, No. 99-CV-136, 1999 WL 1458368, at *4 n.3 (N.D.N.Y. Aug. 13, 1999) (Mordue, J.) (citing Schaal, 134 F.3d at 504).

Here, Dr. Starck-McLean treated Mesler from June 29, 2001 until August 29, 2003 and therefore is considered a treating source. T. 184. Dr. Starck-McLean found that Mesler could sit, stand, and walk two hours in an eight-hour workday, could sit and stand ten-to-fifteen minutes without interruption, and could walk thirty minutes without interruption. T. 185. The ALJ rejected Dr. Starck-McLean's sitting, standing, and walking restrictions as inconsistent with the totality of the medical opinions. T. 17. The ALJ accepted the other restrictions on lifting and carrying made by Dr. Starck-McLean. T. 17.

Dr. Starck-McLean's opinion is supported by other opinions in the record. Dr. Bai, who treated Mesler twice, found she had decreased range of motion in the cervical and lumbar spine, straight-leg rasing was questionably positive to 50º on the right and the impression was chronic low back pain with radiating pain to the right lower extremity, chronic lumbar spine sprain/strain, right hip pain, right lumbar radiculopathy symptom and right sacroiliac joint dysfunction. T. 177. Mesler was referred to Dr. Bai for her back and hip pain. T. 213. In addition, Dr. Shayevitz, a consulting physician, found that Mesler should avoid prolonged sitting, standing, walking, and climbing. T. 152. Dr. Shayevtiz's impression was status post-accident resulting in right shoulder pain, chronic neck pain with radicular component, and low back pain with radiculopathy. T. 151. The prognosis was very guarded. T. 152. Dr. Seth S. Greenky found that Mesler had persistent right shoulder parascapular and back pain of uncertain etiology and recommended an MRI of the cervical and thoracic spine. T. 148. Thus, the opinion of Dr. Starck-McLean was supported by the opinions of

11

three other examining physicians.

While Dr. Holder found that Mesler had a full range of motion in the upper and lower extremities, there was evidence for trigger points deep to the right medial scapular border, sensory examination showed diminution to light touch at the right thumb, index, and little finger as compared with the left, and impression was myofascial pain syndrome right medial scapular border. T. 103. Dr. Holder prescribed trigger point injections and a TENS unit. T. 103.

Mesler underwent physical therapy from July 23, 2001 to May 1, 2002 with no improvement. T 120-46. Mesler testified that the pain from her hip radiated to the back and down the knee. T. 207. Neurological examinations were largely unremarkable, but these examinations were mainly of the right shoulder. Mesler was treated by several physicians, constantly complained of pain, and took several pain medications, including Vicodin, Flexeril, and Celebrex, used hot/cold compresses, used a TENS unit, had steroid injections, underwent physical therapy, and contemplated surgery. T. 65, 207.

The only opinion that was consistent with the ALJ's finding was that of a non-examining physician who found that Mesler could stand and walk six hours in an eight-hour day. T. 153–59. No other physician gave an opinion as to Mesler's exertional limitations of walking, sitting, and standing. Mesler's other treating physician in the record, Dr. Colucci, gave no opinion as to Mesler's back pain as she was referred to him specifically for treatment of her right shoulder. T. 213. Thus, the conclusion is compelled that the ALJ erred in failing to give Dr. Starck-McLean's opinion controlling weight as to Mesler's sitting restriction.

**C. RFC**

Mesler contends that the ALJ erred in finding her capable of a full range of sedentary work. The Commissioner contends that the ALJ properly evaluated Mesler's RFC.

RFC describes what a claimant is capable of doing despite his or her impairments. 20 C.F.R. § 404.1545(a) (2005). "RFC is determined by considering all relevant evidence consisting of, inter alia, [the claimant's] physical abilities, symptoms including pain . . . [or other] limitations which go beyond symptoms." Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, J.) (citing 20 C.F.R. §§ 404.1545, 416.945 (1991)). "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations." Smith v. Apfel, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (Hurd, J.) (citing LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y. 1990) (McAvoy, J.)).

In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply making conclusory statements regarding the claimant's capabilities. Martone, 70 F. Supp. 2d at 150. RFC is then used to determine whether the claimant can perform his or her past relevant work or other work in the national economy. State of N.Y. v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see generally 20 C.F.R. §§ 404.1520, 416.960 (2005).

Here, the ALJ found that Mesler was capable of sedentary work limited by certain non-exertional restrictions which included lifting and carrying ten pounds occasionally, no work overhead, only occasional reaching and fingering with the right arm and hand, no frequent bending or stooping, no pushing or pulling with either lower or upper extremities, and no climbing. T. 215-16. A vocational expert testified that given these limitations, and considering Mesler's age, education and work experience, she could perform work as a call-

out operator and surveillance system monitor, both of which existed in the national and regional economy. T. 216.

However, when posed with a hypothetical which considered the limitations imposed by Dr. Starck-McLean, the vocational expert testified that Mesler would not be able to perform any jobs in the economy on a full-time basis. In light of the recommendation above, the issue of Mesler's RFC must be further considered.

Accordingly, it is recommended that the Commissioner's decision be remanded for further proceedings.

### VI. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision denying disability benefits be **REMANDED** for further proceedings.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Secretary of HHS, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: December 16, 2005
        Albany, New York

_David R. Homer_
United States Magistrate Judge